TJOFLAT, Circuit Judge,
specially concurring:
Given the confusion the Board of Immigration Appeals (“BIA”) demonstrated in stating the standard under which it reviewed the immigration judge’s (“IJ”) decision denying Imelda’s application for relief under the Immigration and Nationality Act (“INA”),[1] I write separately to reiterate the straightforward standard that the BIA should apply on remand. If the BIA decides that Imelda suffered past persecution, or assumes that she did, the BIA must inquire whether the Government has shown by a preponderance of the evidence that “[t]here has been a fundamental change in circumstances such that [Imel *734 da’s] life or freedom would not be threatened on account of’ her Chinese ethnicity or Christian religion or that she “could avoid a future threat to ... her life or freedom by relocating to another part of [Indonesia] and, under all the circumstances, it would be reasonable to expect [Imelda] to do so.” See 8 C.F.R. § 208.16(b)(1)®. If the BIA, however, agrees with the IJ’s finding that Imelda did not suffer past persecution, the inquiry would be whether Imelda met her “burden of establishing that it is more likely than not” that her life or freedom would be threatened on the basis of her ethnicity or religion. Id. § 208.16(b)(l)(in).
I agree that on the current appeal the BIA’s decision must be vacated; I would make clear that this decision should be reached on the narrow ground that the State Department’s 2006 Country Report on Indonesia — the sole evidence relied upon by the BIA — does not at all address the situation of Chinese or Christian persons in Imelda’s province of North Sulawesi.[2] Therefore, if the BIA finds on remand that Imelda suffered past persecution (or assumes that she did), the 2006 Country Report by itself would be insufficient for the Government to meet its burden of showing a fundamental change in circumstances.

. The BIA began its discussion by assuming past persecution. There are two problems with the BIA’s statement of the law. First, in reviewing Imelda's application for withholding of removal, it stated that there has been "a fundamental change in circumstances such that [Imelda] no longer has a well-founded fear of persecution in Indonesia,” which, as the court notes, is the standard for granting an asylum application, not withholding of removal. (Emphasis added). Second, in concluding, it states that Imelda therefore has “not established that she is more likely than not to face persecution.” The court claims that this is the standard for withholding of removal. As I clarify in the text, however, that is not the correct standard if the BIA assumes past persecution.

. There are 33 provinces in Indonesia, each with its own local government. As the court notes, the 2006 Country Report describes Central Sulawesi and Maluku as areas where tensions have eased. Central Sulawesi and Maluku are provinces distinct from North Sulawesi; neither shares a border with North Sulawesi.